UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

UNITED STATES OF AMERICA    )    DOCKET NO. 3:16-CR-200
                            )
        vs.                 )
                            )
BILLY FLOYD,                )
                            )
            Defendant.      )
_____)


TRANSCRIPT OF ARRAIGNMENT HEARING
BEFORE THE HONORABLE DAVID S. CAYER
UNITED STATES MAGISTRATE JUDGE
SEPTEMBER 28, 2016



<u>APPEARANCES</u>:

On Behalf of the Government:

        GREGORY P. BAILEY, ESQ.
        United States Department of Justice
        601 D Street, N.W., Suite 7919
        Washington, DC 20004

On Behalf of the Defendant:

        RAHWA GEBRE-EGZIABHER, ESQ.
        Federal Defenders of Western North Carolina
        129 West Trade Street, Suite 300
        Charlotte, North Carolina 28202



Digitally recorded proceedings transcribed by:

                Cheryl A. Nuccio, RMR-CRR
                Official Court Reporter
                United States District Court
                Charlotte, North Carolina

<u>P R O C E E D I N G S</u>

1

2          (Transcript of proceedings digitally recorded on

3   September 28, 2016.)

4          THE COURT:  United States versus Billy Floyd.

5          Ms. Gebre-Egziabher, is he prepared to be arraigned

6   this morning?

7          MS. GEBRE-EGZIABHER:  Your Honor, I believe he is

8   not.

9          THE COURT:  What's the issue?

10         MS. GEBRE-EGZIABHER:  Perhaps Mr. Floyd can address

11  the Court better than I can.

12         I've explained to him the process of arraignment is

13  the time when most defendants enter a plea of not guilty which

14  then gets the speedy trial clock running.  I have advised him

15  that we have discovery in this matter that he can view.

16         I met with him last week after court and explained

17  the process to him.  I expected that the arraignment would go

18  forward this morning, but I -- I don't believe that he's

19  prepared to agree to go forward with arraignment this

20  morning.

21         THE COURT:  Well, Mr. Floyd, what I perceive here is

22  that you're attempting to obstruct the process here and I'm

23  not going to allow you to do that.  So what we're going to do

24  is we're going to proceed and have a formal arraignment.

25         And Mr. Kaufman, I'm going to ask you to recite the

1 | indictment and then state the penalties on each charge.

2 |       And Mr. Floyd, I need you to just stand there and

3 | listen very carefully to what the U.S. attorney is reading.

4 |       MR. BAILEY:  And Your Honor --

5 |       THE DEFENDANT:  Your Honor, I'm here on special

6 | appearance and I want to make sure that I'm not agreeing -- I

7 | don't understand it really what it amounts to.  I don't --

8 | she -- she's explained to me the process, but I don't

9 | understand why I'm here, Your Honor.

10 |       THE COURT:  Well, sir --

11 |       THE DEFENDANT:  (Inaudible) Judge.

12 |       THE COURT:  -- according to the pretrial report, you

13 | have a bachelor's degree from Wingate University, so I don't

14 | accept the fact that you don't understand what's happening

15 | here.

16 |       Now, I don't want you to say anything else.  I want

17 | you to listen to what the government attorney is saying.  This

18 | is an important step in the proceedings and it's important

19 | that you hear what the government attorney is saying.  But I

20 | don't want you to say anything else.  I just want you to stand

21 | there and listen and then I'll address this when he's

22 | finished.

23 |       MR. BAILEY:  And Your Honor, Greg Bailey on behalf

24 | of the United States.

25 |       THE COURT:  Yes, sir, Mr. Bailey, would you proceed

1   with the arraignment, then, please.

2          MR. BAILEY:  Yes, Your Honor.

3          In the case captioned United States of America

4   versus Billy Darrell Floyd, defendant, this is docket number

5   3:16-cr-200, it's a bill of indictment, and reads:

6          The grand jury charges at times relevant to the

7   indictment:

8          The defendant, Billy Darrell Floyd, hereinafter

9   Floyd, was a resident of Monroe, North Carolina, within the

10  Western District of North Carolina.

11         The Internal Revenue Service, hereinafter IRS, was

12  an agency of the United States Department of Treasury

13  responsible for administering the tax laws of the United

14  States, including the assessment and collection of taxes owed

15  by its citizens and other entities.

16         Count One, a violation of 26, United States Code,

17  Section 7212(a), attempt to interfere with the administration

18  of Internal Revenue Laws.

19         The grand jury realleges and incorporates by

20  reference herein all of the allegations contained in

21  paragraphs 1 and 2 of the bill of indictment, and further

22  alleges that:

23         From at least in or around October 2007 through at

24  least September 2011, in the Western District of North

25  Carolina, and elsewhere, the defendant, Billy Darrell Floyd,

1  did corruptly endeavor to obstruct and impede the due
2  administration of the Internal Revenue Laws by, among other
3  acts, filing and causing to be filed false documents and tax
4  returns with the IRS and the United States Department of
5  Treasury, attempting to prevent the sale of property seized by
6  the IRS, and attempting to intimidate IRS employees.

7           Corrupt acts:

8           Floyd committed corrupt acts, including but not
9  limited to:

10          On or about October 11, 2007, Floyd filed false
11 Amended U.S. Individual Tax Returns, IRS Forms 1040X, for tax
12 years 2000, 2001, and 2002, purporting to reduce his tax
13 liability to zero.

14          On or about November 24, 2009, Floyd filed a false
15 Amended U.S. Individual Tax Return, IRS Form 1040X, for tax
16 year 1999 purporting to reduce his tax liability to zero.

17          On or about August 31st, 2010, Floyd interrupted the
18 IRS sale of 6620 Waxhaw Highway, Mineral Springs, North
19 Carolina, by telling potential buyers that the sale was
20 illegal and the buyer would not have good title to the
21 property.

22          On or about August 31, 2010, Floyd attempted to
23 intimidate potential buyers of the property at 6620 Waxhaw
24 Highway, Mineral Springs, North Carolina, by asking for their
25 names and threatening to sue any buyer of that property.

On or about August 31, 2010, Floyd attempted to intimidate IRS employees conducting the sale of 6620 Waxhaw Highway, Mineral Springs, North Carolina, by threatening to follow them to their vehicles following the attempted sale of 6620 Waxhaw Highway, Mineral Springs, North Carolina.

On or about October 18, 2010, Floyd attempted to interfere with continued IRS attempts to sell the property located at 6620 Waxhaw Highway, Mineral Springs, North Carolina, by filing a lien against the property with the Union County, North Carolina register of deeds.

On or about October 22, 2010, Floyd filed a false Amended U.S. Individual Income Tax Return, IRS Forms 1040X, for tax years 1999, 2000, 2001, 2002, and 2003 purporting to reduce his tax liability to zero in each year.

On or about March 20, 2011, Floyd sent to the IRS a fictitious "Surety Bond" in the amount of $609,939.19, which falsely purported to satisfy a portion of taxes due and owing by Floyd to the IRS for 1999 and 2002.

On or about March 20, 2011, Floyd sent to the IRS a fictitious "Surety Bond" in the amount of $43,358.92, which falsely purported to satisfy a portion of taxes due and owing by Floyd to the IRS for 2000, 2001, 2002, and 2003.

On or about March 20, 2011, Floyd sent to the IRS a fictitious "Surety Bond" in the amount of $312,661.97, which falsely purported to satisfy a portion of taxes due and owing

1   by Floyd to the IRS for 1999, 2000, 2001, 2002, and 2003.

2         On or about March 20, 2011, Floyd sent to the IRS a

3   fictitious "Surety Bond" in the amount of $112,813.50, which

4   falsely purported to satisfy a portion of taxes due and owing

5   by Floyd to the IRS for 1999, 2000, and 2001.

6         On or about March 20, 2011, Floyd sent to the IRS a

7   fictitious "Surety Bond" in the amount of $5,000, which

8   falsely purported to satisfy a portion of taxes due and owing

9   by Floyd to the IRS for 2007.

10         On or about May 16, 2011, Floyd sent to the IRS a

11   fictitious "Surety Bond" in the amount of $17,087.37, which

12   falsely purported to satisfy a portion of taxes due and owing

13   by Floyd to the IRS.

14         All in violation of Title 26, United States Code,

15   Section 7212(a).

16         Count Two, 26, United States Code, Section 7206(1),

17   false return.

18         The grand jury realleges and incorporates by

19   reference herein all of the allegations contained in

20   paragraphs 1 and 2 of the bill of indictment, and further

21   alleges that:

22         On or about October 22, 2010, in the Western

23   District of North Carolina, the defendant, Billy Darrell

24   Floyd, did willfully make and subscribe an Amended U.S.

25   Individual Tax Return, IRS Form 1040X for tax year 1999, which

1  was verified by a written declaration that it was made under
2  the penalties of perjury and which he did not believe to be
3  true and accurate as to every material matter.  That the
4  Amended U.S. Individual Tax Return, IRS Form 1040X for the tax
5  year 1999, which was prepared and signed in the Western
6  District of North Carolina and was filed with the Internal
7  Revenue Service, stated that taxable income was $0, whereas,
8  as he then and there knew his taxable income was significantly
9  greater than the reported amount.

10         All in violation of Title 26, United States Code,
11  Section 7206(1).

12         Count Three, the grand jury realleges and
13  incorporates by reference herein all of the allegations
14  contained in paragraphs 1 and 2 of the bill of indictment, and
15  further alleges that:

16         On or about October 22, 2010, in the Western
17  District of North Carolina, the defendant, Billy Darrell
18  Floyd, did willfully make and subscribe an Amended U.S.
19  Individual Tax Return, IRS Form 1040X for the tax year 2000,
20  which was verified by a written declaration that it was made
21  under the penalties of perjury and which he did not believe to
22  be true and accurate -- excuse me, true and correct as to
23  every material matter.  That the Amended U.S. Individual Tax
24  Return, IRS Form 1040X for tax year 2000, which was prepared
25  and signed in the Western District of North Carolina and was

filed with the Internal Revenue Service, stated that taxable

income was zero, whereas, as he then and there knew his

taxable income was significantly greater than the reported

amount.

All in violation of Title 26, United States Code,

Section 7206(1).

Count Four, the grand jury realleges and

incorporates by reference herein all of the allegations

contained in paragraphs 1 and 2 of the bill of indictment, and

further alleges that:

On or about October 22, 2010, in the Western

District of North Carolina, the defendant, Billy Darrell

Floyd, did willfully make and subscribe an Amended U.S.

Individual Tax Return, IRS Form 1040X for tax year 2010,

which was verified by a written declaration that it was

made under the penalties of perjury and which he did not

believe to be true and correct as to every material matter.

That the Amended U.S. Individual Tax Return, IRS Form 1040X

for tax year 2010, which was prepared and signed in the

Western District of North Carolina and was filed with the

Internal Revenue Service, stated that taxable income was zero,

$0, whereas, as he then and there knew his taxable income was

significantly greater than the reported amount.

All in violation of Title 26, United States Code,

Section 7206(1).

Count Five, the grand jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 and 2 of the bill of indictment, and further alleges that:

On or about October 22, 2010, in the Western District of North Carolina, the defendant, Billy Darrell Floyd, did willfully make and subscribe an Amended U.S. Individual Tax Return, IRS Form 1040X for tax year 2002, which was verified by a written declaration that it was made under the penalties of perjury and which he did not believe to be true and correct as to every material matter. That the Amended U.S. Individual Tax Return, IRS Form 1040X for tax year 2002, which was prepared and signed in the Western District of North Carolina and was filed with the Internal Revenue Service, stated that taxable income was $0, whereas, as he then and there knew his taxable income was significantly greater than the reported amount.

All in violation of Title 26, United States Code, Section 7206(1).

Count Six, the grand jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 and 2 of the bill of indictment, and further alleges that:

On or about October 22, 2010, in the Western District of North Carolina, the defendant, Billy Darrell

1  Floyd, did willfully make and subscribe an Amended U.S.

2  Individual Tax Return, IRS Form 1040X for tax year 2003, which

3  was verified by a written declaration that it was made under

4  the penalties of perjury and which he did not believe to be

5  true and correct as to every material matter.  That the

6  Amended U.S. Individual Tax Return, IRS Form 1040X for tax

7  year 2003, which was prepared and signed in the Western

8  District of North Carolina and was filed with the Internal

9  Revenue Service, stated that taxable income was $0, whereas,

10 as he then and there knew his taxable income was significantly

11 greater than the reported amount.

12         All in violation of Title 26, United States Code,

13 Section 7206(1).

14         A true bill.  The signature is redacted.

15         THE COURT:  And Mr. Bailey, would you state the

16 penalty for each count, please.

17         MR. BAILEY:  The maximum penalties for Count One, a

18 violation of 26, United States Code, Section 7212(a) are three

19 years' imprisonment, one year supervised release, a $5,000

20 fine, and a $100 special assessment.

21         The maximum penalties for Counts Two through Six

22 individually, violations of 26, United States Code,

23 Section 7206(1), are three years' imprisonment, one year

24 supervised release, a $100,000 fine, and a $100 special

25 assessment.

1          THE COURT:  Now, the indictment having formally been

2     read, Ms. Gebre-Egziabher, are you in a position to enter a

3     plea on his behalf?

4          MS. GEBRE-EGZIABHER:  I am, Your Honor, and at this

5     time we'd enter a plea of not guilty.  I assert all of his

6     rights and request a speedy jury trial.

7          THE DEFENDANT:  I'm not agreeing to this, Your

8     Honor.  I don't agree to this.  I don't understand the

9     charges.  I don't understand why we're here.  I have responded

10    to these guys on a timely manner every time they have

11    responded to me and asked, What is it I need to do to settle

12    this matter?

13         Where is their presentment?  If there was a problem

14    in 2011, why are they waiting five years later -- why are they

15    waiting five years later to haul me into court?  And they have

16    not sent anything back letting me know there's any defect

17    whatsoever, any how in any way.  I have boxes and boxes and

18    boxes of letters and I have responded to this gentleman right

19    here over and over and over.  And I have responded to the head

20    of the Treasury over and over.

21         Your Honor, I do not understand why I'm here.  I do

22    not understand -- I can settle the matter.  I can settle

23    anything with these guys.  They just have to bring an actable

24    presentment to me.  I have no problem.  I'm not arguing.  I

25    will be more than happy to take care and settle any matter

1   there is here today period.  I don't have a problem.  But I
2   don't understand why I'm here because I have responded to
3   these guys and they have sent me absolutely nothing back and
4   then they drag me into court.

5           What else am I supposed to do, Judge?  What else am
6   I supposed to do?  I have made every effort.  And my effort
7   has been written, not verbal.  I like a written trail.

8           So what can I do, Judge?  Explain it to me what I
9   can do to resolve this matter with these guys.  I have made it
10  over and over and over.  If there's a defect, I will be more
11  than happy to fix it, but I have to be notified.  Five years
12  later is not adequate.  Five years later is not adequate.

13          So at this point, Judge, I'm asking, could I get
14  with these guys and let them bring me some equitable
15  presentments to settle the matter instead of wasting this
16  Court's time?  I am -- I'm not here to cause a problem.  I'm
17  here to settle.  I'm here to take care of the matter.  I've
18  been here every time you've asked me.

19          But as far as me pleading, I don't have enough
20  information.  I don't know why I'm here.  And I just -- I just
21  don't know why I'm here.  I've asked her.  The only thing
22  she's explained to me is the process.  The process is nothing
23  to me right now.  I need to know why I'm here.  And will be
24  more than happy, more than happy to take care of any matter
25  any how in any way.

1     Do you think that's asking too much, Judge?  These
2  guys have had adequate time to respond.  These guys have had
3  adequate time to give me an equitable presentment to take care
4  of.

5     So I don't feel like I've been neglectful.  I don't
6  feel like I should be here because I haven't been afforded
7  anything back to take care of.  If there was a defect, please
8  let me correct it.  I have no problem with it.  Absolutely
9  not.

10     THE COURT:  Well, sir, I believe that you're getting
11  some bad information or bad advice from somewhere and I don't
12  know -- now, don't say a word.  I don't know whether that's
13  coming from the internet or a third party.  I don't know where
14  it's coming from, but you're getting some bad advice and some
15  bad information.

16     And my response to your question when you said what
17  can you do, I would recommend that you work with
18  Ms. Gebre-Egziabher.  She's an experienced federal defender.
19  I would recommend that you work with her, meet with her,
20  consult with her, let her do her job, let her represent you,
21  and that's -- that's what I would recommend you do.

22     Your case is at the earliest stage right now.  The
23  next step would be for her to receive discovery from the
24  government and review the government's evidence with you and
25  assess the strengths and weaknesses of their case and decide

1   how you're going to proceed.

2           But if you're getting advice or information from
3   somebody other than your lawyer, you're on pretty thin ice in
4   my view and it's going to be to your detriment.  It's going to
5   be to your detriment.

6           THE DEFENDANT:  I understand what you're saying.  I
7   can appreciate what you're saying.  But at this point she's
8   only explained process.  Process is not why we're here.  Does
9   that make sense?  You know, I need to figure out -- I need to
10  completely understand how it is we get here and it's not
11  something I'm getting from anywhere else.  It's from your
12  guys' stuff; it's not from mine.

13          Listen, I've tried to do everything I can and tried
14  to go in the path that is right.  I'm not here to dispute, to
15  deny or anything else.  I'm here to resolve.  And I'll be more
16  than happy to resolve.

17          But I -- you know, without any additional
18  information, I can't plead.  I don't know -- I don't have
19  enough information to plead anyway.

20          THE COURT:  Well, that's --

21          THE DEFENDANT:  Anyway --

22          THE COURT:  That's what I just told you, sir.

23          THE DEFENDANT:  I understand.  I don't have a
24  problem --

25          THE COURT:  Sir, if you interrupt me again, I'm

1  going to hold you in contempt --

2          THE DEFENDANT:  I apologize, Judge.

3          THE COURT:  -- and you won't be leaving the

4  courthouse today.

5          As I tried to explain to you, as your counsel, she

6  will be getting discovery from the government and she will

7  then be in a position to give you more information about your

8  case and for you to see what the evidence is that the

9  government has against you.  That's coming.

10         THE DEFENDANT:  Okay.

11         THE COURT:  That's going to be coming.  And it will

12 be her job to review that with you, give you advice, and

13 you'll proceed from there.

14         THE DEFENDANT:  Ms. -- okay.

15         THE COURT:  Now, that's -- that's -- we've completed

16 the arraignment today.  That's what you were here for

17 today.

18         So with nothing else before the Court -- yes, sir.

19         THE DEFENDANT:  I don't agree with the -- with the

20 not guilty.  Once again, I'm not agreeing with the not guilty

21 and I'm definitely not agreeing with a not guilty from her.

22 So I just want to make it clear for the record that I'm not

23 agreeing with the not guilty.

24         THE COURT:  Yes, sir.

25         MR. BAILEY:  Your Honor, the government would ask at

1  this time that you make a special condition of Mr. Floyd's

2  pretrial release that he not file anything with the Court

3  except through his counsel.

4        THE COURT:  Well, I believe -- and I was going to

5  address that.  I believe when he was before Judge Keesler,

6  Judge Keesler may have told him that.  Were you here then?

7        MR. BAILEY:  I was not here last time, Your Honor.

8        THE COURT:  All right.  Well, sir, the rules of this

9  Court -- the rules of this Court, the local rules say that a

10  defendant may not file matters with the Court when they're

11  represented by counsel.  Counsel has to file matters with the

12  Court.

13        THE DEFENDANT:  I understand, Your Honor.

14        THE COURT:  So --

15        THE DEFENDANT:  The first time we were here I put in

16  paperwork for her to be an assistant.

17        THE COURT:  I told you not to interrupt me again and

18  you have.

19        THE DEFENDANT:  I apologize, sir.

20        THE COURT:  Well, I'm holding you in contempt, sir.

21        THE DEFENDANT:  Please don't do that.

22        THE COURT:  I'm holding you in contempt because

23  you've interrupted me when I told you twice not to do so.

24        Now, I've tried to be fair with you and patient with

25  you, but I specifically ordered you not to interrupt me.

1  You've done it twice now.  So I'm holding you in contempt for
2  interrupting the Court after having been ordered not to do so.
3          Do you want to say anything before I impose a
4  sentence?
5          THE DEFENDANT:  Excuse me, sir?
6          THE COURT:  Do you want to say anything before I
7  impose a sentence?
8          THE DEFENDANT:  How long is the contempt?
9          THE COURT:  Thirty days.
10         THE DEFENDANT:  Oh -- let her take care of it,
11  please, sir.
12         THE COURT:  Do you want to say anything else, sir?
13         THE DEFENDANT:  Please let her take care of it.
14  We'll just move forward.  Sir, I can't --
15         (Counsel conferred with defendant.)
16         THE DEFENDANT:  I have nothing to say, sir.
17         THE COURT:  All right.
18         THE DEFENDANT:  Could we do something different?
19         THE COURT:  All right.  He's committed for 30 days.
20         THE DEFENDANT:  Oh.
21         THE COURT:  I will make it a condition of his bond
22  that he is not to file any further documents with the Court or
23  any other governmental entity.
24         MR. BAILEY:  Thank you, Your Honor.
25         (End of proceedings.)

1  UNITED STATES DISTRICT COURT

2  WESTERN DISTRICT OF NORTH CAROLINA

3  CERTIFICATE OF REPORTER

4

5

6        I, Cheryl A. Nuccio, Federal Official Realtime Court

7  Reporter, in and for the United States District Court for the

8  Western District of North Carolina, do hereby certify that

9  pursuant to Section 753, Title 28, United States Code, that

10  the foregoing is a true and correct transcript of the

11  digitally-recorded proceedings, transcribed to the best of my

12  ability, held in the above-entitled matter and that the

13  transcript page format is in conformance with the regulations

14  of the Judicial Conference of the United States.

15

16        Dated this 21st day of April 2017.

17

18                    s/Cheryl A. Nuccio

19                    _____
                      Cheryl A. Nuccio, RMR-CRR
20                    Official Court Reporter

21

22

23

24

25